IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASHLEIGH TINDLE CASSITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 25-14-MU |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ashleigh Tindle Cassity brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 5 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case…order the entry of a final judgment, and conduct all post-judgment proceedings."); s*ee also* Doc. 6). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and oral argument presented at the June 4, 2025, hearing before

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted for Leland Dudek as the defendant in this action.

the undersigned Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I.  PROCEDURAL HISTORY

Cassity applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on October 7, 2021, alleging disability beginning on July 27, 2021. (Doc. 8, PageID.126). Cassity filed a claim for Supplemental Security Income on August 16, 2022, also alleging disability beginning on July 27, 2021. (Doc. 8, PageID.139). Her application was denied at the initial level of administrative review on May 13, 2022, and upon reconsideration on January 12, 2023. (Doc. 8, PageID.161-165, 167-175). Cassity requested a hearing by an Administrative Law Judge ("ALJ") and appeared at a hearing before the ALJ on July 24, 2023. (Doc. 8, PageID.59-82). On September 13, 2023, the ALJ issued an unfavorable decision finding that Cassity was not under a disability during the applicable time period. (Doc. 8, PageID.33-58). Cassity appealed the ALJ's decision to the Appeals Council, and, on November 13, 2024, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Doc. 8, PageID.18-22).

After exhausting her administrative remedies, Cassity sought judicial review in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed the social security transcript on March 10, 2025. (Doc. 8). Both parties filed briefs setting forth their respective positions. (Docs. 9, 10). Oral argument was held before the undersigned Magistrate Judge on June 4, 2025. (Doc. 11).

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 5. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## II.  CLAIM ON APPEAL

Cassity alleges that the ALJ committed reversible error in violation of Social Security Regulations 20 C.F.R. §416.945, 20 C.F.R. §404.1545, and Social Security Ruling 96-8p in that the Administrative Law Judge's residual functional capacity ("RFC") determination at the fifth step of the sequential evaluation process was not supported by substantial evidence. (Doc. 9, PageID.1807).

## III. BACKGROUND FACTS

Cassity was born on December 10, 1972, and was forty-eight years old on her alleged onset date and forty-nine years old on the date she was last insured for DIB. (Doc. 8, PageID.39).  She has a 12th grade education and past work experience as a scrub tech. (Doc. 8, PageID.270).  Plaintiff's last date of work was in 2015. (Doc. 8, PageID.270).  Cassity alleged that she is unable to work due to seizures, schizoaffective disorder, bipolar tendency, major depression, panic disorder, anxiety, and migraines. (Doc. 8, PageID.115).

## IV. ALJ'S DECISION

The ALJ considered all the evidence of record and evaluated Plaintiff's claim in accordance with the five-step sequential evaluation process set forth in the regulations. (Doc.8, PageID.33-53). The ALJ determined Cassity last met the insured status requirements of the Act on December 31, 2021 ("date last insured"). (Doc. 8, PageID.38). At step one of the sequential disability evaluation, the ALJ found Cassity had not engaged in substantial gainful activity from her alleged onset date through her date last insured. (Doc. 8, PageID.38). At step two, the ALJ found that through her date last insured, Plaintiff had the following severe impairments: seizure disorder, migraines, neck disorder, anxiety,

3

depression, and schizoaffective disorder. (Doc. 8, PageID.38). At step three, the ALJ determined, through the date last insured, Cassity did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8, PageID.39-43).

Before proceeding to step four, the ALJ assessed Plaintiff's RFC through the date last insured. (Doc. 8, PageID.43-51). He found Cassity could perform a restricted range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). Specifically, the ALJ found:

> [T]he claimant can never climb ladders, ropes, or scaffolds. The claimant can never be exposed to unprotected heights, moving mechanical parts, or large open bodies of water. The claimant cannot engage in commercial vehicle driving. The claimant can work in a moderate noise environment, as defined in the Dictionary of Occupational Titles. The claimant can tolerate occasional exposure to fumes, odors, dust, gases, and poor ventilation. The claimant's ability to understand, remember, and apply information and concentrate, persist, and maintain pace would be limited to performing simple and routine and some detailed but not complex tasks. The claimant can occasionally interact with others, and handle occasional changes in a routine work setting.

(Doc. 8, PageID.43). At step four, the ALJ found Cassity unable to perform any past relevant work. (Doc. 8, PageID.51-52). At step five, relying on testimony from a vocational expert, the ALJ found that through the date last insured, given Plaintiff's RFC and vocational profile, there were jobs existing in significant numbers in the national economy that she could perform, such as a Mail Clerk, Non-Postal (Dictionary of Occupational Titles (DOT) No. 209.687-026), Office Helper (DOT No. 239.567-010), and Shipping and Receiving Clerk (DOT No. 222.387-074). (Doc. 8, PageID.52-53). Based on this analysis, the ALJ found Cassity not disabled within the meaning of the Act from the alleged onset

4

date of July 27, 2021, through the date last insured of December 31, 2021. (Doc. 8, PageID.53).

## V. STANDARD OF REVIEW

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E),1382(a)(1)-(2). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam)

5

(citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. DISCUSSION

Cassity claims that the ALJ erred in making an RFC determination that is not supported by substantial evidence and thereby concluding that she can perform jobs existing in significant numbers in the national economy. Specifically, Cassity asserts that

the ALJ did not appropriately evaluate the opinions of her medical providers in assessing her RFC, alleging that "the ALJ found every medical opinion to be only somewhat persuasive." (Doc. 9, PageID.723).  A review of the ALJ's decision does not support this allegation. The ALJ found some opinions persuasive, some unpersuasive, and some partially persuasive, and he sufficiently explained his reasoning for such findings, making Plaintiff's complaint without merit. No reversable error has been shown.

Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. § 404.1513(a). A "medical opinion" is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: ... (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).[3]

---

[3] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Cassity's. The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. §

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using [the following] factors[,]" *id*.: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

"The most important factors...are supportability...and consistency...." 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not

---

404.1513(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in § 404.1527 applies to claims filed before March 27, 2017).

8

required to, explain how [the Commissioner] considered the [other] factors...when... articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id*., unless the Commissioner "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported...and consistent with the record...but are not exactly the same...." *Id*. at § 404.1520c(b)(3).

Cassity first notes the findings at the Disability Determination Service of the reviewing psychologist, Brian McIntyre, Ph.D., who found on February 2, 2022 that:

> A- Claimant retains sufficient mental capacity to understand and remember short and simple one to two step instructions.
>
> B- Claimant retains sufficient mental capacity to carry out short and simple one to two step directions.
> Claimant can maintain attention and concentration for at least a 2-hour period during an 8-hour day utilizing all customary rest breaks.
> Claimant would benefit from regular rest breaks and a slowed pace, but would still be able to maintain an acceptably consistent work pace.
>
> C- Contact with the public should be infrequent, casual, and non-intensive. Claimant would be able to work in coordination and in the same general area with others on a casual basis as long as there are no intense interactions or close coordination requirements.
> Corrective instruction should be presented in a simple, non-confrontational, and supportive manner.
>
> D- Changes in the work setting should be infrequent, introduced gradually, and be well explained.
> Claimant is capable of responding appropriately to work hazards and taking appropriate precautions.

(Doc. 9, PageID.723-24; Doc. 8, PageID.124). Regarding McIntyre's assessment of Cassity's abilities, the ALJ found the opinion "somewhat persuasive" and explained his finding stating that:

> The determination that the claimant has no more than moderate limitations in her mental functioning is consistent with her reported improvement with

> medication management and psychotherapy, the many normal examination findings noted throughout the relevant period, and the claimant's significant reported activities of daily living….Indeed, the moderate limitations and symptomology experienced by the claimant are accommodated by limiting the claimant to simple and routine and some detailed but not complex tasks, and limiting the claimant to occasional interaction with others and occasional changes in a routine work setting. These limits would accommodate her reports of hallucinations, anxiety in social interactions, and alleged paranoia. Therefore, the undersigned can only find this opinion to be somewhat persuasive.

(Doc. 8, PageID.49). The ALJ's decision explains that he agrees Plaintiff has no more than moderate limitations in her mental functioning, which is supported by and consistent with her own reports, exam findings, and activities of daily living. He then notes that these limitations have been considered and incorporated into Plaintiff's RFC, which provides appropriate restrictions regarding her mental functioning.

Second, Cassity notes the January 2022 findings of her treating therapist, Jane Larrimore-Cooke, M.S., who opined in a Mental Residual Functional Capacity Questionnaire that Plaintiff has marked limitations in understanding, remembering or applying information; concentration, persistence, and pace; understanding, remembering, and carrying out instructions; responding appropriately to customary work pressures; and, completing work related activities in a normal workday. (Doc. 8, PageID.549-50). The Questionnaire also finds Plaintiff has moderate limitations in interacting with others; adapting or managing herself; responding appropriately to supervision and co-workers; performing simple tasks; and, performing repetitive tasks. (Doc. 8, PageID.549-50). The Questionnaire finds that repeated episodes of decompensation in work or work-like settings could be expected. (Doc. 8, PageID.549). Larrimore-Cooke also noted the earliest date symptoms and limitations documented in the Questionnaire apply is March

19, 2019, and that "Ashleigh has been diagnosed with schizoaffective bipolar type". (Doc. 8, PageID.550).

> The ALJ provided the following analysis of Larrimore-Cooke's medical opinion:
>
> The undersigned does not find this opinion to be persuasive. No support is provided for the marked limitations in this opinion, and there is no sufficient explanation as to why such limitations would be necessary. Indeed, marked limitations are wholly inconsistent with the objective treatment records, which note response to treatment and no evidence of any episodes of decompensation or required hospital or emergent intervention. While the claimant subjectively alleged hallucinations, her providers failed to document these on exam or note her responding to stimuli. Furthermore, these statements are inconsistent with the claimant's reported activities of daily living, which include performing household chores, making simple meals, spending time with family, shopping, and performing volunteer work at a day care. As this opinion is not supported by reasonable explanation and is inconsistent with the overall evidence, the undersigned cannot find it to be persuasive.

(Doc. 8, PageID.50). This analysis clearly explains that the ALJ found the opinion unpersuasive because its conclusions were not supported by reasonable explanation and were inconsistent with Plaintiff's own reports of her activities and her objective treatment records.

The ALJ's decision indicates that he sufficiently considered McIntyre and Larrimore-Cooke's medical opinions under the required factors in 20 C.F.R. § 404.1520c. Cassity has failed to convince the undersigned that the ALJ's RFC determination was based on an irrational view of the record as a whole, which includes the opinions of numerous other medical providers, and the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *See Chester*, 792 F.2d at 131. Accordingly, the Court will not disturb the ALJ's evaluation of the medical opinions challenged by Cassity.

## VII. CONCLUSION

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **24th** day of **November, 2025**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**